IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN DOE,                         )
                                  )
        Plaintiff,                )
                                  )        CIVIL ACTION FILE NO.
v.                                )
                                  )        1:18-cv-05714-WMR
MOREHOUSE COLLEGE,                )
                                  )
        Defendant.                )
_____   )

### BRIEF IN SUPPORT OF MOREHOUSE COLLEGE'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFF'S TITLE IX EXPERT CHARLES HUEBER, Ed.D.

COMES NOW Defendant Morehouse College ("Morehouse" or the "College"), and hereby files this Memorandum of Law in support of its *Daubert* Motion to Exclude Testimony and Opinions of Plaintiff's proffered expert Charles Hueber, Ed.D. ("Dr. Hueber"), showing this Court as follows:

### INTRODUCTION

Plaintiff intends to call first-time "expert" Dr. Hueber at the trial of this case to provide legal opinions and conclusions that, *inter alia*, Morehouse "failed to meet the requirements of Title IX."  In short, Plaintiff has made Dr. Hueber a member of his legal team while cloaking him with the label of an allegedly disinterested expert. Dr. Hueber is trying to usurp the role of this Court by purporting to educate the fact

finder on the law and taking on the role of Plaintiff's counsel by arguing the legal implications of Morehouse's alleged conduct.  Such testimony is inadmissible.

Moreover, Dr. Hueber is not qualified to present his proffered testimony – or any testimony – as a Title IX expert.  Not only is he not a lawyer, but Dr. Hueber also has less than a decade of experience as a <u>deputy</u> Title IX coordinator at Schreiner University in Kerrville, Texas, and has shown no effort to credential himself as a scholar or expert within the Title IX community.  Dr. Hueber's proffered testimony would invade the province of this Court and not assist the jury.  Accordingly, his testimony must be excluded as a matter of law.

## **LEGAL STANDARD FOR EXCLUDING EXPERT TESTIMONY**

To determine the admissibility of expert testimony under Federal Rule of Evidence 702, a trial court in the Eleventh Circuit must conduct "a rigorous three-part inquiry," considering whether:

> (1) the expert is qualified to testify competently regarding the matters which he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1106 (11th Cir. 2005).  The district court must act as a "gatekeeper, 'screening out experts

whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand.'" *Durkin v. Platz*, 920 F. Supp. 2d 1316, 1329 (N.D. Ga. 2013) (citation omitted). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Cook*, 402 F.3d at 1110. Dr. Hueber fails this inquiry. He purports to offer inadmissible legal opinions and conclusions that he is not qualified to offer and that will not assist the trier of fact to understand the evidence or to determine a fact in issue.

## ARGUMENT AND CITATION OF AUTHORITES

### I. DR. HUEBER'S LEGAL OPINIONS AND CONCLUSIONS ARE IRRELEVANT AND WILL NOT ASSIST THE TRIER OF FACT.

Each of Dr. Hueber's opinions relate to or support his ultimate opinion that Morehouse's conduct in this case violated Title IX. (*See generally* Expert Report of Dr. Charles Hueber, Ed.D. ("Report"), a true and correct copy of which is attached hereto as Exhibit "A.") His testimony is nothing more than ill-informed legal opinions, which must be excluded because they will not assist the trier of fact in making factual determinations.

Expert testimony only is admissible if it is based on "scientific, technical or other specialized knowledge" and it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Thus, expert testimony

regarding a pure legal issue is not relevant to the fact-finder." *Durkin*, 920 F. Supp. 2d at 1332 (internal quotations and citations omitted). *See also Coyote Portable Storage, LLC v. PODS Enters., Inc.*, No. 1:09-cv-1152-AT, 2011 WL 1870593, at *3 (N.D. Ga. May 16, 2011) (barring expert testimony as to interpretation of franchise agreement which would have essentially decided the case); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 2009) (finding that the district court abused its discretion by allowing expert to testify about the scope of the insurer's legal duty to defend under insurance policy); *Plantation Pipeline Co. v. Continental Cas. Co.*, 1:0-cv-2811-WBH, 2008 WL 4737163, at *7 (N.D. Ga. July 31, 2008) (concluding that expert opinions regarding coverage under an insurance policy are inadmissible as expert legal opinion); *S. Pine Helicopters, Inc. v. Phoenix Aviction Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (finding that an expert opinion as to whether insured helicopter was being operated in violation of Federal Aviation Administration regulations, within the meaning of a policy exclusion, was inadmissible, in action to recover on policy); *R & R Intern., Inc. v. Manzen, LLC*, 09-60545-CIV, 2010 WL 3605234, at * 19 (S.D. Fla. 2010) ("While an expert may be able to offer an opinion as to whether one party or another acted in compliance with industry standards, an expert cannot permissibly opine on whether a party had

a right to do what it did under legal standards.  Instead, this area is reserved for the Court.").

Under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." *N. Am. Specialty Ins. Co. v. Wells*, No. cv412-146, 2013 WL 4482455, at *2 (S.D. Ga. Aug. 19, 2013).  "However, an expert may not 'merely tell the jury what result to reach.'"  *Id.*  (quoting *Montgomery*, 898 F.2d at 1541.  Consequently, expert witnesses "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct."  *Dahlgren v. Muldrow*, No. 1:06-cv-00065-MP-AK, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008); *see also Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp.3d 1343, 1365 (N.D. Ga. 2014) ("An expert may not testify regarding the legal implications of conduct because the court must be the jury's only source of law."); *Domercant v. State Farm Fire and Cas. Co.*, 2013 WL 11904719, *2 (N.D. Ga. May 15, 2013) ("the court will not permit a party to cloak its legal arguments in the garb of an expert witness").

Expert testimony must be limited to ensure that it "does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it." *Coyote Portable Storage, LLC*, 2011 WL 1870593, at *4 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd

Cir. 1991) ("[A]n expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.")). But Dr. Hueber, in his role as an advocate, is attempting to violate these well-settled norms. He is attempting to (incorrectly) instruct the jury on the relevant law and tell the jury what conclusions to reach. These efforts are impermissible as a matter of law.

Dr. Hueber's opinions are mere legal conclusions about the College's liability under Title IX:

- "Morehouse College had enough information to launch an investigation against Peterson in May 2015 . . . ."

- "After review if [sic] this case it is my opinion that the college failed to meet the requirements of Title IX."

- "Enough information was reported to create concern and an initial investigation should have taken place to determine if a possible Title IX violation had occurred."

(Ex. "A" at 1-2.) Here, Dr. Hueber is plainly applying his understanding of the facts to his faulty understanding of Title IX law and attempting to instruct the jury on ultimate legal issues.

Dr. Hueber's other legal conclusions include: 1) finding a faculty member would qualify as a school administrator who had authority to stop the harassment; 2) finding that Morehouse had actual knowledge of Plaintiff's claims prior to

January 2018; and 3) opining that the College was deliberately indifferent in the context of Title IX.  (Ex. "A" at 2.)  Here, Dr. Hueber is merely regurgitating the elements of a Title IX claim, or the "three tenets" as he calls it, and reciting his legal conclusions based on his review of the record.  (Deposition of Dr. Charles Hueber ("Hueber Dep.") 120:4-121:19, 152:7-153:6, 154:19-24, Sept. 24, 2020, excerpts of which are attached hereto as Exhibit "B".)  Dr. Hueber's conclusions usurp the jury's function of reaching a determination of liability based on an analysis of the facts after receiving instruction on the relevant law. Another example of this is when he testified in deposition regarding whether Morehouse should have started an investigation sooner. Dr. Hueber testified that:

> In the context of all of this, when you look at all of these depositions, I think any reasonable person would look at this and say the university had enough information to at least question someone; and that's where I go.  The basis of my entire opinion is based on the fact that the university should have launched an investigation in 2015 following the trip to Brazil.

(Ex. "B" at 135:14-21.)  This is not the proper function of an expert.

Courts do not allow expert witnesses to instruct the fact finder as to the law because it is important that the jury will be instructed properly by a learned and neutral jurist.  Dr. Hueber's testimony demonstrates the risk of permitting someone other than a judge to give legal instruction to the fact finder.  In his deposition, Dr.

Hueber provided a definition of "deliberate indifference" not based on the operative statute, case law, or secondary authorities, but rather on his own interpretation: "[d]eliberately indifferent means knowledge and choosing not to, and **that's how I interpret it**. I mean, that's not the Webster Dictionary definition, but deliberately indifferent means you knew of something and you choose to ignore it." (Ex. "B" at 160:9-15 (emphasis added).) Of course, Dr. Hueber's legal interpretation is wrong. "Deliberate indifference occurs when the official's 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 684 (11th Cir. 2019). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Id.* "In essence, a school must 'official[ly] deci[de] . . . not to remedy the violation' for its response to rise to the level of deliberate indifference." *Id.* Dr. Hueber's oversimplification (or layman's understanding) of this critical Title IX element perfectly illustrates why expert witnesses "are prohibited from testifying as to questions of law regarding the interpretation of a statute[.]" *Dahlgren*, 2018 WL 186641, at *5.

If permitted by this Court, Dr. Hueber's testimony would impermissibly hijack the roles of the judge and jury. *See Coyote Portable Storage, LLC*, 2011 WL 1870593, at *4. Any testimony Dr. Hueber offers regarding Morehouse's purported

liability under Title IX requires him to make legal conclusions. (Ex. "B" at 144:10-21, 152:7-153:6, 154:19-24.) Dr. Hueber should not be allowed to assert legal opinions and conclusions while cloaked with the authority of a supposed expert. Such legal opinions would not assist the trier of fact.

The ultimate liability decision rests squarely in the province of the jury. Whether Morehouse's alleged conduct constitutes a Title IX violation is a question for this Court on summary judgment or a question for the jury at trial. Dr. Hueber should not be permitted to encroach upon the fact finder's domain and instruct the jury as to how it should find. Dr. Hueber does not offer any opinions that do not violate these long-established standards for the introduction and use of expert testimony. Accordingly, his opinions must be excluded in their entirety.

## II. DR. HUEBER IS NOT QUALIFIED TO TESTIFY AS A TITLE IX EXPERT.

Even if his opinions were otherwise proper and admissible, which Morehouse denies, Dr. Hueber is not qualified to testify as a Title IX expert. He has failed to distinguish himself as a Title IX expert by knowledge, skill, experience, training, or education. This is the first time Dr. Hueber has been proffered as an expert witness. (Ex. "A" at 3; Ex."B" at 90:25-91:15; Dr. Charles Hueber's *Curriculum Vitae* ("CV"), a true and correct copy of which is attached hereto as Exhibit "C.") Although a lack of prior testifying experience alone is not grounds for

disqualification, Dr. Hueber has shown that he is wholly unqualified to testify as a Title IX expert in federal court.

As an initial matter, Dr. Hueber's educational background lacks substantive Title IX-specific training.  In 2001, Dr. Hueber received his Bachelor of Arts in Speech Communication and Kinesiology. (Ex. "C.")  A year later, he graduated with a Master of Interdisciplinary Studies in Counseling and Psychology, completing a thesis on *Student Leadership: Theories and Personality: A Blueprint for Success*. (*Id.*)  And in 2012, Dr. Hueber completed a Doctor of Education in Supervision, Curriculum, and Instruction in Higher Education at Texas A&M University-Commerce.  (*Id.*)  His doctoral dissertation was on *The Impact of Social Integration Program on Grade Point Average and Retention*.  (*Id.*)  Dr. Hueber's formal education did not include a specific concentration on Title IX.  (Ex. "B" at 26:1-34:10; Ex. "C.")

Second, Dr. Hueber does not have meaningful professional Title IX experience outside of his current employment.  He has been the Dean of Students and Chief Student Affairs Officer at Schreiner University in Kerrville, Texas since 2013.  (Ex. "C.")  In that position, he serves as the <u>deputy</u> coordinator for student Title IX issues.  (Ex. "B" at 43:23-24, 45:7-9.)  He started his Title IX focus in earnest only after taking a job at Schreiner University in 2013. (Ex. "B" at 55:17-

57:2.)   And since that time, most of his training has involved attendance at conferences.  (*Id.*)

Next, Dr. Hueber has made no effort to distinguish himself as a scholar or expert within the Title IX community.  The Presentations & Publications section of his CV only identify a few Title IX presentations, each given within the scope of his duties at Schreiner.  (Exhibit "C.")  In deposition, Dr. Hueber only recalled the specifics of two outside presentations, though he thinks there may be a total of "three or four" not listed on his CV.  (Ex. "B" at 82:11-84:24.)  He first identified a workshop for "ten or so professionals" that he gave at the Association for the Promotion of Campus Activities.  (*Id.* at 83:13-22.)  That presentation occurred "during the conference that they just found a gap and asked me to do that." (*Id*.)  He also identified a webinar he conducted for studentaffairs.com related to handling Title IX affairs for a small college.  (*Id.* at 83:23-84:2.)

Dr. Hueber also has never published any articles or other writings about Title IX.  (*Id.* at 85:4-9.)  Nor did he review any Title IX treatises or professional periodicals when analyzing the facts of this case.  (*Id.* at 123:1-14.)  Moreover, although he has authored some Title IX policies as a part of his job at Schreiner, he has never written a Title IX policy for any other institution.  (*Id.* at 86:5-9.)

Fourth, his general lack of participation in the professional Title IX community is matched by his lack of study and learning in connection with the development of his opinions in this case.   In fact, Dr. Hueber's opinions and conclusions are his own creation, developed based on his training, but without reference to scholarly or legal sources.   For example:

> Q:  Did you pick up the code of federal regulations and review it in connection with this case?
>
> A:  No.
>
> Q:  Did you pick up any legal opinions and review them in connection with your analysis of this case?
>
> A:  Legal opinions? I didn't pick up any legal opinions. I had a -- just my knowledge of the subject. I mean, I reference a Supreme – the Supreme Court. I know that for years we've -- in our trainings we reference the -- the sort of -- that -- that very -- relatively in the Title IX world, in my opinion, famous statement; the authority – someone who has the authority to stop harassment, actual knowledge of harassment, and deliberately indifferent. I mean, those three tenets are basic, you know -- it's something we've used in our trainings for years as to what -- you know, what -- how a school can and should be held responsible for Title IX. And so -- but that was not a reference to any specific legal case or anything. That's just from training we know that. We understand that this is what Title IX is about, and I'm -- that's over the years. That's a general knowledge thing for us at this point, in my opinion.

Q:     There's been no review of any particular judicial orders, case law, nothing like that specifically in connection with this case?

A:     Yes. No -- no review of any specific. My goal was to look at this case as an individual and on its own merit. So I didn't -- I intentionally did not try to look at other cases. I took the knowledge that I have of what Title IX means and put it – put this case through the filter that I run our normal investigations through as well and used that to form an opinion.

(Ex. "B" at 120:18-122:5.)

Dr. Hueber also admitted that he purported to establish a legal standard in his

Report by using a quote for which he could not identify its origin.

Q:     Further along in that paragraph you say, a college can be held liable for sexual harassment of a student by either an employee or fellow student if, quote, a school administrator who has authority to stop the harassment has actual knowledge of the harassment and is deliberately indifferent to the harassment, end quote. Where is that quotation from?

A:     I'm quoting different trainings that I have been a part. I mentioned this earlier. This is a very common statement that's given in our Title IX trainings. I believe this comes directly from the Supreme Court. And, again, I'm not a legal person, so I don't know how all of that gets disseminated; but I believe -- and this is what we have been trained on as Title IX deputies and this is what -- this is a statement that I share with my faculty constantly, and I quote it from my own experience. But, to my knowledge, those are the three tenets in which schools can be held

13

> responsible, and so the -- I can't cite the direct case.
> I mean, I probably could. I could look it up, but I've
> just used this for the -- for a while in my trainings.
> And this is -- this is how I have been taught to – to
> understand Title IX.

(*Id.* at 152:7-153:6.)

Perhaps the most glaring example of Dr. Hueber's lack of qualifications is his

confusion about and reliance in his Report on the 2011 Dear Colleague Letter issued

by the Department of Education's Office for Civil Rights, which the Trump

Administration rescinded in 2017.[1]  (Ex. "A" at 3-22.)



<p style="color:red">RESCINDED</p>

**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 4, 2011

Dear Colleague:

Education has long been recognized as the great equalizer in America. The U.S. Department of
Education and its Office for Civil Rights (OCR) believe that providing all students with an
educational environment free from discrimination is extremely important. The sexual

---

[1]     *See*   https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct, a true and correct copy of which is    attached    hereto    as    Exhibit    "D,"    and https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf, a true and correct copy of which is attached hereto as Exhibit "E.")

(Ex. "E.")  In his deposition, Dr. Hueber testified he had no idea the letter, which he

incorrectly described as a regulation, was rescinded three years earlier.

> Q: Okay. And that guidance was issued on April 19 4th, 2011. Is that guidance still in effect?
>
> A: That's an interesting question, and I can't definitively answer it because parts of it – it establishes the -- the parameters for Title IX, you know. So is the guidance in effect? In part. I mean, every time new guidance is issued you could say it supplements -- supplants the previous guidance, but it's built upon this. To say is that guidance still in effect, in part, yes. It's been adjusted and changed over the course of years . . . .

(Ex. "B" at 113:18-114:3.)

> Q: Is it in effect today?
>
> A: In effect? Again, that's a -- that's not -- that question -- yes and no. Each -- each new regulation that comes out doesn't necessarily replace the old regulation in its entirety, and so I would say, yes. …

(*Id.* at 114:14-19.)  In a word, to be admissible an expert opinion must be reliable.

However, Dr. Hueber showed in his deposition that his testimony and opinions on

Title IX are neither reliable nor trustworthy.

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*,

Inc., 509 U.S. 579 (1993), emphasized that trial courts are required to

conscientiously screen expert testimony for relevance and reliability.  *Daubert*, 509

U.S. at 589.  In the context of the expert in *Daubert*, that required that the district court ensure that such testimony constitutes "good science" and that expert's findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Daubert*, 509 U.S. at 590-93. As the Supreme Court explained in *General Electric Co. v. Joiner*:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

522 U.S. 136, 146 (1997) (citation omitted).

The knowledge required of an expert witness takes more development than a few years in a position and attendance at a handful of seminars.  It requires more than guesswork and requires more than regurgitation of quotes of unknown origin heard in trainings.  There is no question that the dictates of *Daubert* apply strongly and directly to Dr. Hueber.  He has demonstrated nothing more than a surface-level understanding of Title IX that not qualify him as an expert.  Under Federal Rule of Evidence 702, an expert witness's "competence must match the subject matter of the witness's testimony." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006).  But Dr. Hueber has not shown himself sufficiently competent to opine as to Morehouse's legal obligations under Title IX or to evaluate Plaintiff's claims

within the context of Title IX.  His opinions lack any support other than the authority of Dr. Huber's own authority, which lacks any indicia of reliability.

Moreover, Dr. Hueber seeks affirmatively to establish Morehouse's liability under Title IX.  (Ex. "A.")  In doing so, Dr. Hueber must necessarily opine on legal issues on which he is not qualified.  Courts may exclude expert testimony if, as here, the testimony of the witness lies outside of his area of expertise.  *See, e.g.*, *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (noting that many courts "have excluded testimony when they determine that the witness is testifying to an area outside of—but related to—his expertise" because an expert witness "must stay within the reasonable confines of his subject area") (internal citations and quotations omitted)).

An expert's qualifications must be capable of objective proof and a witness's mere assertion that he knows an area or is an expert is not good enough.  Indeed, the "party proffering expert testimony [has] the burden to show that his expert [is] qualified to testify competently regarding matters he intend[s] to address . . . ." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253 (11th Cir. 2002).  Plaintiff has not and cannot meet this burden because Dr. Huber's qualifications are not capable of such proof.

## <u>CONCLUSION</u>

WHEREFORE, Defendant Morehouse College respectfully requests this Court **GRANT** its Motion to Exclude Expert Testimony of Plaintiff's Expert, Dr. Charles Hueber and exclude the testimony of Dr. Hueber from being used in this case as a matter of law.

This 16th day of December, 2020.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054
John M. Hamrick
Georgia Bar No. 322079
Juliana O. Nwafor
Georgia Bar No. 140608

Regions Plaza, Suite 1800
1180 West Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  juliana.nwafor@hklaw.com

Counsel for Defendant
Morehouse College

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| **v.** ) | |
| ) | **1:18-cv-05714-WMR** |
| **MOREHOUSE COLLEGE,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned counsel certifies that the within and foregoing **BRIEF IN SUPPORT OF MOREHOUSE COLLEGE'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFF'S TITLE IX EXPERT CHARLES HUEBER, Ed.D.** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 16th day of December, 2020.

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| **v.** ) | |
| ) | **1:18-cv-05714-WMR** |
| **MOREHOUSE COLLEGE,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served a true and correct copy of the within and foregoing **BRIEF IN SUPPORT OF MOREHOUSE COLLEGE'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFF'S TITLE IX EXPERT CHARLES HUEBER, Ed.D.** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following Counsel of Record:

R. Cade Parian, Esq.
Parian Injury Law, LLC
One Atlantic Center, Suite 2342
1201 West Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 795-5035
Facsimile:  (404) 953-7020
E-Mail:  cade@westgalawyer.com

Lindsay Anne Cordes, Esq.
(admitted *pro hac vice*)
Tad Thomas, Esq.
(admitted *pro hac vice*)
Thomas Law Offices
9418 North Commons Blvd., Suite 200
Louisville, Kentucky  40059
Telephone:  (877) 955-7001
Facsimile:   (502) 791-8352
E-Mail:  lindsay.cordes@thomaslawoffices.com
E-Mail:  tad@thomaslawoffices.com


This 16th day of December, 2020.

<div align="right">

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054

</div>