## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN DOE,

     Plaintiff,

v.

MOREHOUSE COLLEGE,

     Defendant.

CIVIL ACTION FILE
NO. 1:18-cv-05714-WMR

## <u>ORDER</u>

This case is before the Court on Plaintiff's Motion for Sanctions [Doc. 103], Plaintiff's Motion for Partial Summary Judgment [Doc. 104], Defendant's Motion to Exclude the Testimony and Opinions of Plaintiff's Title IX Expert [Doc. 124], Defendant's Motion for Summary Judgment [Doc. 127], Defendant's Motion to Strike Plaintiff's Statement of Material Facts [Doc. 137], Defendant's Motion to Strike Plaintiff's Filings in Response to Motion for Summary Judgment [Doc. 143], Plaintiff's Motion for Relief under Fed. R. Civ. P. 6(b)(1)(B) [Doc. 150], and Plaintiff's Motion to Strike Portions of the Errata Sheet and Declaration of Corporate Representative Keith Cobbs [Doc. 152].

Upon consideration of the parties' arguments on the respective motions, and after review of all appropriate matters of record, the Court GRANTS Plaintiff's

Motion for Relief under Fed. R. Civ. P. 6(b)(1)(B) [Doc. 150], DENIES Defendant's Motion to Strike Plaintiff's Statement of Material Facts [Doc. 137], DENIES Defendant's Motion to Strike Plaintiff's Filings in Response to Motion for Summary Judgment [Doc. 143], DENIES Plaintiff's Motion for Partial Summary Judgment [Doc. 104], and GRANTS Defendant's Motion for Summary Judgment [Doc. 127]. In light of its ruling on summary judgment, the Court DENIES the remaining motions [Doc. 103, Doc. 124, and Doc. 152] as moot.

## I.    PRELIMINARY MATTERS

Defendant has moved to strike Plaintiff's belated Statement of Material Facts offered in support of his Motion for Partial Summary Judgment, as well as Plaintiff's belated Response to Defendant's Motion for Summary Judgment and Statement of Material facts. [See Doc. 137; Doc. 143].  Consequently, Plaintiff has filed a motion under Fed. R. Civ. P. 6(b)(1)(B) requesting that the Court accept his untimely filings based on excusable neglect.

The determination of "what sorts of neglect will be considered 'excusable'' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the parties' omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395 (1993).  The Court notes that "excusable neglect . . . is a flexible and somewhat forgiving notion." *Bartels v. S. Motors of Savannah, Inc.,*

No. CV 414-075, 2015 WL 4111894, at *1 (S.D. Ga. July 7, 2015).  In determining

whether a party's neglect is excusable under Rule 6(b), courts in this Circuit consider

the following factors: "(1) the danger of prejudice to the opposing party; (2) the

length of delay and its potential impact on judicial proceedings; (3) the reason for

the delay, including whether it was within the reasonable control of the movant; and

(4) whether the movant acted in good faith." *Glover v. City of Pensacola*, 372 Fed.

Appx. 952, 955 n. 6 (11th Cir. 2010) (per curiam) (citing *Pioneer*, 507 U.S. at 395).

> Plaintiff's Statement of Material Facts in support of his Motion for Partial
> Summary Judgment

In his brief in support of the Motion for Partial Summary Judgment, filed on

November 17, 2020, Plaintiff included within the body of his brief a section entitled

"Statement of Facts," wherein he cited to numerous materials and testimony in the

record in support of his motion [*see* Doc. 104-1 at 2-20], as well as a section entitled

"Material Facts To Which There Is No Genuine Issue To Be Tried." [*See* Doc. 104-

1 at 20-21].  According to Plaintiff, he believed in good faith that this satisfied the

requirements of LR 56(B)(1), NDGa.[1]

---

[1] LR 56(B)(1) states that "[a] movant for summary judgment shall include with the motion
and brief a *separate*, concise, numbered statement of the material facts to which the movant
contends there is no genuine issue to be tried." (Emphasis supplied).

Nevertheless, Plaintiff filed a separate Statement of Material Facts on December 18, 2020, asserting that "Plaintiff listed the majority of the facts in [his brief in support of] the Motion for Partial Summary Judgment, but is filing this supplemental filing to ensure compliance with the LR 56(B)(1)." [*See* Doc. 131 at 1, n.1].  Defendant now seeks to strike Plaintiff's separately-filed Statement of Material Facts.  Conversely, Plaintiff seeks to have his separately-filed Statement of Material Facts deemed as properly filed under Fed. R. Civ. P. 6(b)(1)(B).

Defendant argues that the initial statement of material facts that was included within Plaintiff's brief in support of his Motion for Partial Summary Judgment should not be considered by this Court because it was not filed as a separate document as required by LR 56(B)(1).  Defendant further argues that "Plaintiff cannot flout this Court's Local Rules and then expect the unbridled freedom to correct his fatal error with an unauthorized, improper, out-of-time filing" of his subsequent Statement of Material Facts.

The Court notes that "Local Rule 56.1 protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *Morrison v. City of Atlanta*, No. 1:12-cv-02691-AT, 2014 WL 11858147, at *1 (N.D. Ga. Jan. 9, 2017). The purpose of this rule is "to help the court identify and organize the issues in the

case." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  In the present case, the Court acknowledges that the material facts outlined in Plaintiff's brief in support of its Motion for Partial Summary Judgment are essentially the same as those in the subsequent separately filed Statement of Material Facts.  Thus, the Court finds that it has not been hampered in identifying and organizing the issues on motion for summary judgment, which is the very purpose of LR 56.1(B)(1).  Under these circumstances, the Court finds that Plaintiff's failure to initially file his statement of material facts as a separate document is not fatal to his Motion for Partial Summary Judgment in this case.

Furthermore, the Court finds that Plaintiff's subsequent late filing of his separate Statement of Material Facts was due to excusable neglect and, thus, will be allowed under Fed. R. Civ. P. 6(b)(1)(B).  Plaintiff simply misunderstood the requirements of LR 56.1(B)(1) and believed in good faith that his act of including the pertinent material facts within his brief would be sufficient.  As the subsequent Statement of Material Facts has the same substance and form as the initial material facts outlined in his brief in support of his Motion for Partial Summary Judgment, the Court finds that Defendant has not been prejudiced by Plaintiff's belated filing of his separate Statement of Material Facts.  Lastly, the Court finds that Plaintiff's delay in filing a separate Statement of Material Facts has had no impact on the

judicial proceedings in this case.  Accordingly, the Court will consider Plaintiff's Statement of Material Facts [Doc. 131] as being timely filed.

For the above reasons, Plaintiff's Motion for Relief under Fed. R. Civ. P. 6(b)(1)(B) [Doc. 150] is **GRANTED** as to this issue and Defendant's Motion to Strike Plaintiff's Statement of Material Facts [Doc. 137] is **DENIED**.

<u>Plaintiff's Response to Defendant's Motion for Summary Judgment</u>

Defendant's Motion for Summary Judgment was filed on December 16, 2020, and, pursuant to LR 7.1(B), Plaintiff's responsive filings were due on January 6, 2021.[2]  However, Plaintiff filed his Response to Defendant's Motion for Summary Judgment on January 11th, 2021, five days after the due date. Plaintiff filed his Response to Defendant's Statement of Material Facts for Which No Genuine Issue Exists at 12:53 a.m. on January 12th, 2021, barely six days after the due date. According to Plaintiff's counsel, the belated filings were due to her mistaken assumption that the submission deadline posted on PACER, which indicated that the submission deadline date was January 11th, 2021, was correct. Plaintiff's counsel states that she was also aware that numerous deadlines had been reset by the Court due to Defendant's requests for extensions and that she simply relied upon the

---

[2]  Local Rule 7.1(B) states that '[a]ny party opposing a motion [for summary judgment] shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than … twenty-one (21) days after the service of the motion.

PACER submission deadline to her detriment. [Doc. 150-1 at 6-7].   Further, Plaintiff's counsel states that there were numerous motions and pleadings filed in this case over several months that required responses, which created confusion on her calendars – due, in part, to the fact that counsel has another case against Defendant pending in the District Court for the Northern District of Georgia (*Doe v. Morehouse College*, Case No.1:20-CV-04227).

Based on the foregoing, it appears to the Court that counsel's delay in filing Plaintiff's Responses was not the product of bad faith or any nefarious motive. Rather, Plaintiff's counsel had another case involving Defendant and numerous motions to address, and she mistakenly relied upon the PACER deadline listed within the case file.  The Court notes that the Eleventh Circuit has previously found excusable neglect relating to similar delays. *See Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198 (11th Cir. 1999) (finding excusable neglect where "the reason for the delay was the failure of a former secretary of [plaintiff's] attorney to record the applicable deadline"); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (finding that a late filing was due to excusable neglect, as it "was simply an innocent oversight by counsel" that was the result of a breakdown in communication between attorneys); *Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848, 850 (11th Cir. 1996) (finding that missing a filing

deadline was attributable to negligence because there was "no indication that counsel deliberately disregarded" the local rules or "that Cheney intended to delay the trial or that he sought an advantage by filing late").  *See also Carter v. Butts County, Ga*., Case No. 5:12-CV-209 (LJA), 2015 WL 3477022, at *2 (M.D. Ga. June 2, 2015) (finding excusable neglect where the "delay in filing was due to a simple calendaring error").

Weighing the *Pioneer* factors, the Court finds that Plaintiff's neglect in filing his Responses five days and six days late, respectively, is excusable.  First, Defendant will not be prejudiced by the consideration of Plaintiff's Responses because Defendant has already filed its substantive replies to the Responses. Second, the Court has since held a hearing on the Motion for Summary Judgment and the prior delay in the filing of the Responses has had no impact on the judicial proceedings or the efficient administration of justice. Third, the reason for delay was the type of "innocent oversight" that courts in this Circuit have repeatedly deemed excusable. Finally, there is no evidence that counsel for Plaintiff acted in bad faith. Accordingly, the Court will consider Plaintiff's Responses as though timely filed.

For the above reasons, Plaintiff's Motion for Relief under Fed. R. Civ. P. 6(b)(1)(B) [Doc. 150] is **GRANTED** as to this issue and Defendant's Motion to

Strike Plaintiff's Filings in Response to Motion for Summary Judgment [Doc. 143] is **DENIED**.

Having resolved the above preliminary matters, the Court will now address the parties' respective motions for summary judgment. [Doc. 104; Doc. 127].

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is required when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party carries the initial burden, the burden then shifts to the non-moving party to demonstrate that there is an issue of material fact that precludes summary judgment. *Id.*  Summary judgment is only appropriate if the non-moving party fails to meet its burden of presenting evidence sufficient to create a genuine issue of material fact as to an essential element of its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While all evidence and factual inferences are viewed in a light most favorable to the nonmoving party, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## III.   <u>UNDISPUTED MATERIAL FACT</u>

Plaintiff, a former Morehouse College student, is asserting Title IX claims against Morehouse in connection with the alleged sexual harassment committed by one of Morehouse's assistant professors, Dr. Robert Peterson. [*See Complaint*, Doc. 1-1].  Plaintiff's claims arise out of incidents that occurred during his participation in Morehouse's Pan-African Global Experience ("MPAGE") study abroad program in Brazil in May of 2015. [*Id*.]

During the 2015 MPAGE trip to Brazil, Dr. Peterson allegedly engaged in inappropriate behavior toward Plaintiff and other students by making sexually suggestive comments, sending inappropriate text messages to students, inviting students to his room to make alcoholic drinks, and touching or sucking a student's nipple while frolicking in the pool with the students. [Doc. 1-1 at 46-47, 49, 54 (Investigator's Report)]. In regard to Plaintiff, specifically, Dr. Peterson allegedly sexually assaulted Plaintiff by touching his inner thighs several times during the international flight to Brazil and by touching his leg under the table during a meal while in Brazil. [*Id*.; *see also* Doc. 114 at 26 (Depo. transcript pp. 100-101)].

Dr. Patricia DeSouza, another Morehouse faculty member, served as a chaperone along with Dr. Peterson on the trip to Brazil. [Doc. 127-1 at 5 ¶17]. While Dr. DeSouza did not observe Dr. Peterson touch the Plaintiff in any inappropriate manner, she did notice that Dr. Peterson was "overly friendly" and "very interactive" with the students, and that his conversations with the students would sometimes have sexual overtones or undertones like "locker room talk" between friends. [Doc. 118 at 6 (Depo. transcript p. 18)]. When she noticed that Dr. Peterson was hanging around Plaintiff more than the other students, Dr. DeSouza asked the Plaintiff if that bothered him or made him feel uncomfortable. [*Id*. at 6 (Depo. transcript p. 18)]. At that time, Plaintiff said "no" and indicated that "it was okay." [*Id*.] According to Plaintiff, he later complained to Dr. DeSouza about Dr. Peterson's inappropriate behavior. [Doc. 101-9 at 25]. Notably, Plaintiff testified at his deposition that he did not say anything to Dr. DeSouza about Dr. Peterson touching him inappropriately. [Doc. 114 at 45 (Depo. transcript p. 45)]. Dr. DeSouza testified that she ultimately confronted Dr. Peterson about his behavior of acting like the students' friend instead of their professor during the trip. [Doc. 118 at 11 (Depo. transcript p. 38)].

Upon returning from Brazil, Dr. DeSouza had a meeting with Dr. Ida Mukenge, the Director of the MPAGE program, and Dr. Michael Dillon, DeSouza's superior. During this meeting, Dr. DeSouza voiced her concerns about Dr.

Peterson's behavior during the trip to Brazil.  Specifically, she expressed her opinion that "Dr. Peterson is a liability, and I don't want to travel with him again." [Doc. 118 at 10 (Depo. transcript p. 36:09-37:12)]. When Dr. Mukenge asked her why, Dr. DeSouza stated that Dr. Peterson was not mature enough to interact with college students without blurring the line between his role as their professor and acting as their friend. [*Id.* at 10-11 (Depo. transcript pp. 36-39]. At that point, Dr. DeSouza felt that she had fulfilled her responsibilities by giving them her opinion and that, if Dr. Mukenge or Dr. Dillon had any concerns about Dr. Peterson's behavior, they would investigate it further by talking to the students who went on the trip. [*Id*. at 11 (Depo. transcript p. 40].

Approximately two years later, in November of 2017, a person posted on Twitter that Dr. Peterson had threatened to fail him if he didn't have sex with him. [Doc. 101-12].  Valerie Haftel, a professor at Morehouse, saw the tweet and reported it to Morehouse's General Counsel, Joy White, who passed the information on to Morehouse's Title IX Coordinator, Terraine Bailey, on November 9, 2017. [Doc. 101-4 at 118]. After receiving several reports in November and December of 2017 regarding allegations of inappropriate sexual conduct by Dr. Peterson, Morehouse opened a formal investigation. [Doc. 101-9].

Although Plaintiff asserts that he submitted an online Title IX complaint to Morehouse in December 2017 regarding Dr. Peterson's alleged sexual assault and harassment that occurred during the 2015 MPAGE trip, Morehouse contends that it did not receive such a complaint [*see* Doc. 101-4 at 14 (Depo. transcript pp. 49-50)], and there is no evidence in the record to support Plaintiff's assertion that he submitted one online.

Nevertheless, Plaintiff and his mother met in person with Morehouse's Title IX Coordinator, Terraine Bailey, on January 23, 2018, to formally file a Title IX complaint. [*Id*.]  At that time, Ms. Bailey indicated that she was already aware of various allegations against Dr. Peterson that had been learned from the investigation that commenced in late 2017 and that Plaintiff had been identified during that investigation as a person that needed to be interviewed. [*Id*. at 15-16 (Depo. transcript pp. 53-59].  Plaintiff requested for a no-contact order to be issued against Dr. Peterson at that time, and Ms. Bailey issued the no-contact order on February 28, 2018. [Doc. 101-6 at 77].

Upon completion of the investigation into the allegations against Dr. Peterson, the investigator, Nancy Sprattlin, concluded that "Dr. Peterson engaged in conduct that may be deemed to run afoul of Title IX, Morehouse Sexual Misconduct Policy, and/or Morehouse Code of Conduct." [Doc. 1-1 at 53]. On April 20, 2018,

Morehouse notified Dr. Peterson that it was terminating his employment, effective April 1, 2018. [Doc. 101-4 at 63 (Depo. transcript pp. 245-247)]. Although Plaintiff was no longer enrolled at Morehouse, he was notified of the final outcome of the investigation and of Dr. Peterson's termination by letter dated July 6, 2018. [Doc. 101-8 at 96].  Four months later, on November 6, 2018, Plaintiff initiated this lawsuit in the State Court of Fulton County, Georgia. [Doc. 1-1 at 7].

## IV.   <u>DISCUSSION</u>

As will be discussed more fully below, the Court finds that Plaintiff's Title IX claim fails as a matter of law because: (1) Plaintiff's claim is untimely and precluded by the applicable two-year statute of limitations; (2) the factual allegations underpinning Plaintiff's purported entitlement to relief rest entirely on conduct that occurred outside the United States, and Title IX has no extraterritorial application in this case; and (3) Plaintiff has not established that Morehouse had "actual knowledge" of Plaintiff's Title IX complaint until he reported it to Morehouse in January 2018 and has not demonstrated that Morehouse acted unreasonably and with "deliberate indifference" after having actual knowledge of Plaintiff's complaint.

### A.  Georgia's Two-Year Statute of Limitations Bars Plaintiff's Title IX Claim

The Eleventh Circuit has held that "a Title IX claim for damages is most closely analogous to a common law action for personal injury; therefore, the [state's] statute of limitations for personal injury actions controls."  M.H.D. v. Westminster Schools, 172 F.3d 797, 803 (11th Cir. 1999).  Georgia's statute of limitations for personal injury actions mandates that "[a]ctions for injuries to the person…be brought within two years after the right of action accrues." O.C.G.A. § 9-3-33.  The statute covers "'not only injuries to the physical body, but every other injury, for which an action may be brought, done to the individual, and not to his property.'" M.H.D., 172 F.3d at 803 (citing Hutcherson v. Durden, 113 Ga. 987, 39 S.E. 495, 497 (1901).

Although Georgia's two-year statute of limitations applies to Plaintiff's Title IX claim in this case, federal law controls as to when Plaintiff's cause of action under Title IX accrued. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007) (explaining that, although a state statute of limitations applies to a civil rights claim under Section 1983, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law"); *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1275 (11th Cir. 2014) ("When a federal court borrows a limitations period from state law for use in implementing a federal law that does not possess a

self-contained statute of limitations, the court is nonetheless applying federal law. Accordingly, although state law specifies the duration of the limitations period, federal law determines the date on which that period begins"); *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir. 1985) (stating that "although state law specifies the duration of the limitations period [for a RICO claim], federal law determines the date on which that period begins"); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759-61 (5th Cir. 2015) (holding that "while the limitations period is borrowed from state law, the particular accrual date of a federal cause of action is a matter of federal law") (citation and quotation marks omitted).

Based on the allegations and evidence of record in this case, the Court finds that Plaintiff had two years from the date of the alleged injury in 2015 to bring a claim for damages against Morehouse under Title IX.  The general federal rule for accrual is "the discovery rule," meaning that a cause of action accrues "when the plaintiff knew or *should have known* of his injury and its cause." *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997) (emphasis supplied); *see also King-White*, 803 F.3d at 762 ("Under federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured'") (citation omitted); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136

(9th Cir. 2006) ("'[T]he touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action'") (citation omitted).

Plaintiff asserts that he suffered the sexual assault and harassment during the May 2015 MPAGE trip to Brazil.  It is his knowledge of the pertinent circumstances surrounding his alleged injury that governs accrual of the claim and triggers the statute of limitations clock. *See A.W. v. Humble Indep. Sch. Dist*, 25 F. Supp. 3d 973, 989 (2014) (holding that claim accrued when the student "had both knowledge of the injury and knowledge of the causal link between the injury and [school district] from the moment the injury began but refrained from reporting the injury").  Plaintiff was aware of what purportedly happened to him during the trip to Brazil at the time it occurred, the identity of his alleged assailant (Dr. Peterson), and the causal connection between his alleged injury and the institution that employed Dr. Peterson (Morehouse). *See id.*; *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 439 (S.D.N.Y. 2014), *aff'd*, 579 Fed. Appx. 7 (2d Cir. 2014) (holding that the plaintiff's Title IX claim failed even under the discovery rule).

However, Plaintiff contends that his Title IX cause of action based on deliberate indifference did not accrue until late 2017 when he allegedly realized that

"nothing had been done regarding [Dr.] Peterson." [*See* Doc. 140 at 2].  While the Court has not found any precedent in the Eleventh Circuit directly on point, the Court finds the Fifth Circuit's analysis of a similar argument in *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 759-61 (5th Cir. 2015*)* to be persuasive.

In *King-White*, the trial court had dismissed the plaintiff's teacher-on-student Title IX claim as time-barred under the State of Texas' two-year statute of limitations for personal injury claims, finding that the plaintiff's claim accrued at the time she became aware of her abuse. *King-White*, 803 F.3d at 762.  On appeal, the plaintiff argued that, for accrual purposes, "the relevant injury should be viewed as [the school's] and the School Official's ratification of and deliberate indifference to the abuse." *Id.*  The Fifth Circuit considered this argument and held that the plaintiff's claim was still time-barred because the plaintiff had sufficient "awareness" of the school's and the school officials' conduct (i.e., a failure to do anything) soon after the assault occurred. *See id.*  In so holding, the Fifth Circuit acknowledged that "'awareness' for accrual purposes does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further,'" and it concluded that "the circumstances alleged in [the] complaint would undoubtedly have prompted a reasonable person to investigate [the school's] and School Officials' conduct further." *Id.* Notably, the

fact that the plaintiff may not have known "about complaints from other parents" or certain school "policies" until some period of time later did not save the plaintiff's claim because she still knew sufficient facts at the time of *her* abuse that would have led a reasonable person to investigate the school's indifferent conduct sooner. *Id.* at 762-63.

Like the Fifth Circuit's holding in *King-White*, this Court finds that Plaintiff's argument that his Title IX claim did not accrue at or near the time of the sexual assault and harassment is without merit. Although Plaintiff may not have had actual knowledge of Morehouse's alleged indifference to Dr. Peterson's 2015 conduct until he realized in 2017 that "nothing had been done," the facts of this case show the existence of circumstances that would have led a reasonable person in Plaintiff's position to investigate Morehouse's conduct further soon after returning from the Brazil trip in May of 2015. Specifically, Plaintiff asserts that he reported Dr. Peterson's inappropriate behavior to Dr. DeSouza during the trip, Dr. Peterson remained on campus as a professor after returning from the trip, and no one from Morehouse's administration reached out to Plaintiff to discuss what happened during the trip.[3]   Thus, even if Plaintiff did not have actual knowledge of Morehouse's

---

[3]  The Court notes that Plaintiff's argument that his Title IX claim did not accrue until the fall of 2017 is wholly inconsistent with his substantive argument that Dr. DeSouza was an appropriate person under Title IX with actual knowledge of the alleged events at the time

alleged deliberate indifference in 2015, the record demonstrates that Plaintiff had sufficient "awareness" of the pertinent circumstances for purposes of determining accrual of his claims under federal law. *See King-White*, 803 F.3d at 762-73. Accordingly, the Court finds that Plaintiff's Title IX deliberate indifference claim accrued in 2015 and expired two years later—in 2017. Because this action was not filed until November 5, 2018, Plaintiff's Title IX claim is time-barred as a matter of law.

### B. Title IX Does Not Apply Extraterritorially

The issue of whether a statue operates extraterritorially is not an affirmative defense. Rather, the issue of whether a statute has extraterritorial application involves "a cannon of construction, or a presumption about a statute's meaning." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010); s*ee, e.g.*, *Litecubes, LLC v. N. Light Prods*, 523 F.3d 1353, 1363 (Fed. Cir. 2008) ("[A] limitation on the extraterritorial scope of a statute is no different than any other element of a claim which must be established before relief can be granted under a particular statute").

In *Morrison*, the Supreme Court outlined a two-part test to assess the extraterritoriality of a federal law: (1) whether Congress intended the law to apply

---

they took place in 2015, but acted with deliberate indifference in failing to report that information. [*See* Doc. 101-1 at 21-22].

outside the United States; and (2) whether the specific facts could be considered sufficient to overcome the presumption of that federal law does not apply extraterritorially. *Morrison*, 561 U.S. at 266-67.

Title IX provides that "[n]o person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis supplied).  The phrase "in the United States" is not mere surplusage – it indicates that application of the statute hinges on the location of the person asserting and invoking the protections of Title IX. The plain words of Title IX specify that the protections of the statute extend to discriminatory conduct against persons in the United States; the statute does not specify whether its protections extend to discriminatory conduct that occurs to U.S. citizens while outside of the United States.  Thus, under first prong of the *Morrison* test, the Court presumes that Congress did not intend for Title IX to apply extraterritorially.  The Court notes that other district courts have held that Title IX does not have extraterritorial application.  *See, e.g., Harbi v. Mass. Inst. Of Technology*, No. 16-12394-FDS, 2017 WL 3841483, at *5 (D. Mass. Sept. 1, 2017) (plaintiff who was located in France was not protected under Title IX from discrimination occurring during online course by a professor located in the United

21

States); *Phillips v. St. George's University*, 2007 WL 3407728, at *4 (E.D.N.Y. Nov. 15, 2007) (finding "that the plain language of Title IX affirmatively indicates Congress's intent that the statute not apply extraterritorially").

Under the second prong of the *Morrison* test, the Court must analyze whether the particular facts and circumstances of this case are significant enough to overcome the presumption that Title IX does not apply extraterritorially.  The Court in *Morrison* acknowledged that it would be rare for a Title IX case to exist based on matters occurring entirely outside the United States, but "relevant" conduct occurring in the United States could serve to rebut the extraterritoriality presumption. *Morrison*, 561 U.S. at 266.

In this case, it is undisputed that the inappropriate conduct (sexual assault and harassment) that underpins Plaintiff's Title IX claim occurred on a flight over international waters and then later after Plaintiff had arrived in Brazil.  Plaintiff has never made any allegations of sexual assault or harassment against Dr. Peterson based on conduct that occurred in the United States.  Thus, the "relevant conduct" giving rise to this action did not occur in the United States.  Although Plaintiff contends that Morehouse acted with deliberate indifference to that extraterritorial conduct, the fact remains that the underlying conduct itself does not fall within the ambit of Title IX protections.  In sum, it would be unjust to allow Plaintiff to

maintain a Title IX claim against Morehouse for allegedly acting with deliberate indifference to conduct which is not covered by Title IX.  Accordingly, the Court finds that Title IX has no extraterritorial application in this case.

### C.  Actual Knowledge and Deliberate Indifference

"To survive a motion for summary judgment, a plaintiff seeking damages and alleging teacher-on-student sexual harassment must submit evidence showing (1) [a school] official with the authority to take corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct." *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 Fed. Appx. 680, 683 (11th Cir. 2019) (citation and internal quotation marks omitted).  Further, "the school official must be 'high enough up the chain-of-command that [her] acts constitute an official decision by the school [ ] itself not to remedy the misconduct.'" *Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) (quoting *Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999)).

Plaintiff's theory of the case relies on the premise that Dr. DeSouza, one of the chaperones for the Brazil trip, was an appropriate person for Title IX purposes, meaning that she had the authority to implement corrective measures in response to Dr. Peterson's alleged conduct during the trip.  However, there is no evidence in the record indicating that Dr. DeSouza had any ability to institute corrective measures

on behalf of Morehouse. Although Morehouse's Title IX policy in effect at the time of the 2015 Brazil trip defined Dr. DeSouza as a "mandatory reporter" for Title IX purposes, DeSouza did not have the authority to redress complaints of sexual violence or sexual misconduct. [*See* Doc. 1-1 at 63-64; Doc. 152-3 at 6 ¶19 and at 17-18; Doc. 118 at 11 (Depo. transcript p. 41:5-10]. Indeed, Morehouse's Title IX policy explicitly provided that only certain enumerated Morehouse employees had any such authority, and ordinary faculty members such as Dr. DeSouza are not among them. [Doc. 1-1 at 63-64; Doc. 152-3 at 17-18].

Furthermore, even if Dr. DeSouza could be considered as having the requisite authority to redress complaints of sexual misconduct, Plaintiff testified at his deposition that he did not say anything to Dr. DeSouza about Dr. Peterson touching him inappropriately during the Brazil trip. [Doc. 114 at 45 (Depo. transcript p. 45)]. Dr. DeSouza testified that, upon returning from the trip, she voiced her concerns about Dr. Peterson's immature and irresponsible behavior to Dr. Mukenge and Dr. Dillon [*see* Doc. 118 at 10-11 (Depo. transcript p. 36-39], but nothing she discussed with Dr. Mukenge and Dr. Dillion gave rise to the specter of any issues related to any conduct during the Brazil trip that could or should have prompted them to take any Title IX-related action concerning Dr. Peterson. [*Id.*] *See, e.g., J.F.K. v. Troup Cty. Sch. Dist.*, 678 F.3d 1254, 1260-62 (11th Cir. 2012) (holding school principal

did not have actual notice of risk of teacher-on-student sexual harassment where principal knew that the teacher's conduct was "inappropriate, devoid of professionalism, and reeked of immaturity," but there was no indication that the teacher's conduct was of a sexual nature).

"Deliberate indifference occurs when the official's 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Kocsis*, 788 Fed. Appx. at 684. "In essence, a school must official[ly] deci[de] . . . not to remedy the violation for its response to rise to the level of deliberate indifference." *Id.* (citation and internal quotation marks omitted). The trigger for deliberate indifference is, of course, actual notice.

Plaintiff asserts that Morehouse's response to his allegations was clearly unreasonable because Morehouse failed immediately to begin an investigation against Dr. Peterson upon the conclusion of the 2015 Brazil trip and by failing to provide Plaintiff with certain accommodations after he left Morehouse in 2017 and tried to return as a student.  However, as noted above, Morehouse did not have actual notice of Plaintiff's allegations until he met with Morehouse's Title IX Coordinator, Terraine Bailey, on January 23, 2018, to submit his Title IX complaint. [S*ee* Doc. 101-4 at 14 (Depo. transcript pp. 49-50)]. Upon learning of Plaintiff's allegations at that time, Morehouse immediately opened a formal investigation, and its investigator

later generated a report of her findings. [Doc. 101-9]. Morehouse suspended Dr. Peterson soon after the formal Title IX investigation began, and Morehouse ultimately terminated Dr. Peterson's employment effective April 1, 2018. [Doc. 101-4 at 63 (Depo. transcript pp. 245-247)].

Moreover, the College offered supportive measures and accommodations to Plaintiff following the submission of his Title IX complaint. Indeed, Morehouse entered a no contact order, offered to Plaintiff the opportunity to meet with student counseling services, and offered victim support services to Plaintiff. [Doc. 119 at 50 (Depo. transcript p. 194; Doc. 101-6 at 77]. Although Plaintiff may have preferred the implementation of different or alternative measures, Morehouse's response to Plaintiff's Title IX complaint was not clearly unreasonable. *See Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 648 (holding that a plaintiff-student in a Title IX case has no right "to make particular remedial demands"). As there is no evidence in the record to support the claim that Morehouse responded with deliberate indifference after Plaintiff complained in January 2018, Plaintiff's Title IX claim based on deliberate indifference must fail. *See Kocsis*, 788 Fed. Appx. at 685-86 (holding that plaintiff submitted no evidence of deliberate indifference to counter the record facts that, upon notice, the university promptly launched an investigation whereby students and faculty were interviewed).

26

For all of the above reasons, the Court concludes that Plaintiff's Motion for Partial Summary Judgment [Doc. 104] should be DENIED and that Defendant's Motion for Summary Judgment [Doc. 127] should be GRANTED.

## V.   <u>REMAINING MOTIONS</u>

In light of the Court's ruling on the parties' respective motions for summary judgment, Plaintiff's Motion for Sanctions [Doc. 103], Defendant's Motion to Exclude Testimony of Plaintiff's Title IX Expert [Doc. 124], and Plaintiff's Motion to Strike Portions of Errata Sheet and Declaration of Keith Cobbs [Doc. 152] are DENIED as moot.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

- Plaintiff's Motion for Relief under Fed. R. Civ. P. 6(b)(1)(B) [Doc. 150] is **GRANTED**;

- Defendant's Motion to Strike Plaintiff's Statement of Material Facts [Doc. 137] is **DENIED**;

- Defendant's Motion to Strike Plaintiff's Filings in Response to Motion for Summary Judgment [Doc. 143] is **DENIED**;

- Plaintiff's Motion for Partial Summary Judgment [Doc. 104] is **DENIED**;

- Defendant's Motion for Summary Judgment [Doc. 127] is **GRANTED**; and

- Plaintiff's Motion for Sanctions [Doc. 103], Defendant's Motion to Exclude the Testimony and Opinions of Plaintiff's Title IX Expert [Doc. 124], and Plaintiff's Motion to Strike Portions of the Errata Sheet and Declaration of Corporate Representative Keith Cobbs [Doc. 152] are **DENIED as moot**.

IT IS SO ORDERED, this 30th day of August, 2021.


WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE